The State *v.* Central Ohio Mutual Relief Association.

2. This claim assumes that Mrs. Quarles was in her estate under the will of the father and not as heir, but it overlooks the fact that the will vested this life estate in trustees for her benefit, so that Mrs. Quarles could not convey even the life estate so as to defeat the estate of the trustees.

3. The defendant having fully enjoyed the life estate under the conveyance, can not now insist on the forfeiture to the prejudice of the remaindermen.

We find no error in this record; therefore the judgment below must be affirmed.

THE STATE OF OHIO EX REL. THE ATTORNEY-GENERAL *v.* THE CENTRAL OHIO MUTUAL RELIEF ASSOCIATION.

1. Mutual relief associations, incorporated and organized under the act of April 20, 1872, as amended February 3, 1875, are not authorized to provide for the payment of stipulated sums of money to persons other than the family or heirs of a deceased member.

2. A certificate of incorporation under the act of February 3, 1875, setting forth that "the manner of carrying on the business shall be such as the association may from time to time prescribe by rules, regulations, and by-laws not inconsistent with the laws of the state," is not a compliance with the third clause of section 2 of the act of April 20, 1872, which requires the certificate to show "the manner of carrying on the business of said association."

3. In *quo warranto* against a corporation, where it has assumed franchises not granted, and it appears that the certificate of incorporation does not comply with the requirements of the statute under which it is organized, the court, in the exercise of its discretion, will oust it of the franchise to be a corporation.

PROCEEDINGS in *quo warranto.*

This is a proceeding instituted by the attorney-general on his own relation.

The information states that the defendant is an incorporated company, formed and organized under the act of

May 1, 1852, and the acts supplementary thereto, and charges that ever since its organization it has continuously, within this state, to wit, at the county of Champaign, etc., offended against the laws of this state, grossly abused and misused its corporate authority, franchises, and privileges, and unlawfully assumed and usurped franchises and privileges not granted to it, and especially in the following particulars, to wit (here follows seven specifications, the substance of all of which, so far as the testimony renders them material, is embodied in the eighth specification, which reads as follows):

"For hire and reward, it has unlawfully issued to various persons, for their use and benefit respectively, instruments of writing, denominated certificates of membership, being of the tenor and effect of wagering policies of life insurance, and thereby agreed and undertaken to pay to each of such persons, or his representatives, upon the death of a third person named in such instrument (such third person being a stranger to such pretended contract, and even to the parties thereto, and often in failing health, and the insured having no insurable or other interest in the life of such third persons), a large sum of money, to wit, $5,000, more or less, and that, too, without the means or power of fulfilling such pretended contracts upon its part; and in consideration of hire and reward in each case, it has entered into a large number of such pretended contracts with the same person, undertaking to insure him thereby in a vast aggregate sum, to wit, in one instance, over $150,000, against the deaths of a large number of strangers, to wit, in one instance, over fifty ; and it is still engaged in such unlawful and swindling operations."

The prayer is that the defendant be adjudged to have forfeited its franchises, and be ousted therefrom, or at least from the franchises so unlawfully assumed and abused by it.

The plea admits the incorporation and organization of the defendant under the act of May 1, 1852, and the amendatory act thereto of February 3, 1875. A copy of its certificate of organization is set out, which, omitting the formal parts, is as follows:

" 1. The name of the association, and which it shall be known by, shall be ' The Central Ohio Mutual Relief Association.'

" 2. The principal office and place of business of said corporation shall be in North Lewisburg, Champaign county, Ohio.

" 3. The manner of carrying on the business of the association shall be *such as it may from time to time prescribe, or which may be prescribed by the rules and regulations and by-laws of the association,* not inconsistent with the laws of the state, and the purposes of the association as herein expressed." The purpose expressed is as follows : " That said association has been formed and organized for the mutual protection and relief of its members, and for the payment of stipulated sums of money to the families or heirs of the deceased members of the association."

A copy of the by-laws of the association is made part of the answer also. Article 1 is a repetition of the name, location, and purpose of the association, as contained in the certificate of incorporation.

Art. 2, sec. 1, provides that no person shall be entitled to any relief until they have been enrolled as a member.

" Sec. 2. After any person has been enrolled on the books of the association as a member, at his or her death, his or her family or heirs, or assigns named in the certificate as the beneficiary, shall be entitled to the sum of one dollar for each and every *bona-fide* member of his or her class in the first division, or the sum of five dollars for each and every *bona-fide* member in his or her class in the second division.

" Sec. 3. Every member is required to pay to the association, within thirty days after an assessment has been made for the death of a member, in his or her class in the first division, the sum of one dollar and twenty-five cents—one dollar for the death fund, and twenty-five cents for expense. Every member is required to pay to the association within thirty days after the assessment has been made for the death

VOL. XXIX—26

of a member in his or her class in the second division, the sum of five dollars and fifty cents—five dollars for the death fund, and fifty cents for expense.

" Sec. 4. Every member of the second division is required to pay to the association the sum of ten dollars as annual dues for the first five years, and thereafter five dollars per year; and every member of the first division, the sum of two dollars as annual dues. The annual dues are to be paid within thirty days after they are due."

Section 5 provides that any member failing to pay annual dues or assessments shall forfeit membership and all claim to relief, together with all moneys previously paid.

Articles 3, 4, 5, 6, 7, and 8 relate to the officers and agents of the association; the mode of their appointment; their duties; the bonds to be given by the secretary, treasurer, and agents, etc.

"Art. 9, sec. 1. Any amendment to these by-laws must be made in writing, and be presented to the secretary, who will call a meeting of the directors.

" Sec. 2. The amendment, after having been duly read, must receive the sanction of two-thirds of the directors before it can become a part of the by-laws."

The answer also sets out copies of the application, and certificate of membership.

The questions contained in the application to be answered by the applicant, would indicate that only persons free from hereditary diseases, of good health and temperate habits, would be received as members. The certificate of membership is based upon the application, and recites those provisions of the by-laws relating to the death fund, assessments, dues, etc., and when delivered, constitutes the contract between the member and the corporation.

The plea then alleges that the statute under which it is organized, and the certificate of organization, constitutes the only authority for the defendant's organization and assuming to exercise the franchises enumerated in, and indicated by the said constitution, by-laws, and forms of application for and certificate of membership. It denies generally and

·specifically that it is doing or assuming to do any of the alleged wrongs, or exercising any of the alleged illegal fran·chises in the information complained of.

It admits that prior to the filing of the information some of its agents committed the error and irregularity of pro·curing certificates to be issued to and for the benefit of persons not entitled as members or otherwise; but claims that the officers of the association, on being apprised thereof, ·promptly corrected the same and made restitution to the ·parties injured, before the information was filed.

It therefore asks the court to adjudge and determine in what respect, if any, its said certificate of incorporation, its ·constitution and by-laws, or its forms of application for and certificate of membership, come short of conformity with law, so that the error, if any exists in its organization and the franchises indicated by said muniments, may be corrected and remedied.

*John Little,* attorney-general, for relator.
*W. H. West* and *W. R. Warnock,* for respondent.

GILMORE, J. It has been held by this court that mutual relief associations, incorporated and organized under the act of February 3, 1875, are not subject to the statutes of this state relating to life insurance and life insurance companies. *The State v. The Mutual Protection Association of Ohio,* 26 Ohio St. 19.

This does not determine what will constitute a proper incorporation and organization of such associations under the act named; but it is conceded in the information in the ·case before us, that the defendant has been incorporated and ·organized under the act, which must be taken to be an admission that it is lawfully incorporated and organized; and ·even if it has been made to appear by the exhibits that it has made part of its plea, that it has failed to comply with some of the material requirements of the law, in its incorporation and organization, such failure will not, in this ·case, authorize a judgment of ouster, on the ground that

it was not duly incorporated, notwithstanding they may be looked to for another purpose, as will hereafter appear.

To entitle the state to a judgment of ouster, therefore, the defendant must have been guilty of abusing or misusing its corporate franchises and privileges in respect to some or all of the unlawful matters charged in the information.

The eighth charge in the information, which is given in the statement of the case, contains a statement, somewhat in detail, of the substance of what had been previously specifically charged.

The testimony taken on the hearing of the case fully sustains each allegation of fact contained in the information as detailed in the eighth charge. The substance of these charges may be thus stated:

1. That for hire and reward the defendant is and has been insuring its members and others against the loss of the lives of strangers, in whom they have no insurable or other interest, and issuing to them certificates of membership, and thereby agreeing to pay them, respectively, large sums of money, on the happening of events—viz., the death of such strangers—as to which they have no interest whatever.

2. That for hire and reward, in each case, it has entered into a large number of contracts with the same person, undertaking to insure him thereby in the aggregate sum of $150,000, or more in one instance, against the deaths of fifty or more strangers to the insured, without the consent or knowledge of such strangers, many of whom were in failing health, and in whose lives the insured had no insurable interest.

The act under which the defendant is created (69 Ohio L. 82) declares that such associations are to be incorporated "for the mutual protection and relief of its members, *and for the payment of stipulated sums of money to the families or heirs of the deceased members of such association.*" The certificate of incorporation and the by-laws of this

:association use the language above quoted in declaring its purposes.

The corporate powers of the association are limited to the carrying into effect of the purposes thus declared. The only beneficiaries for whom it has power to provide are the "families or heirs of deceased members."

The charges of which the defendant has been found guilty upon the evidence constitute gross abuses of its franchises and privileges. The sixty-four certificates of membership that were issued to one person, who was not a member, upon the lives of strangers, in whom the insured had no insurable interest, were in the nature of gambling or wagering certificates as known in life insurance. The association had no power either to make such contracts or to issue certificates of membership thereon; and as to those who were participating in the transactions with knowledge of the facts, they were what the information denominates them—*i. e.* "swindling operations." This is substantially conceded by counsel for defendant in argument, and the blame is laid upon the agent who filled out and forwarded the sixty-four applications; and it is claimed that the officers of the association were ignorant of the facts, and had no intention of doing wrong or abusing the franchises of the corporation in issuing the certificates. The defendant is willing that it may be ousted from the privilege of issuing such certificates in the future. It is further claimed, that having refunded to the party taking out these certificates the full amount paid therefor, and canceled them on the books of the association, the court should not declare a forfeiture of all its franchises and oust it from being a corporation.

Under some circumstances, this claim of the defendant might be favorably regarded, but in this case it must be rejected.

These incorporated mutual relief associations were unknown in this state until quite recently. Our people have therefore had but little opportunity to practically test their usefulness, even when strictly confined in their operations to carrying out their purposes as declared by the statute.

That they might be successfully and beneficially operated, under some circumstances, I do not doubt.

Mr. May, in his work on insurance, section 146, in speaking of mutual insurance, says : " Its original design was to provide cheap insurance by means of local associations, the members of which should insure each other. Such associations are in their nature adapted only to local business." What is here said of mutual insurance is more strongly applicable to mutual relief associations.

Again, putting a fair construction upon the language of the statute authorizing their creation, it seems clear that it was not the intention that corporations should be formed and operated under it, by parties whose principal object was the making of money for themselves, by pushing the operations of the association, in all parts of the state, by means of all the appliances known to the life insurance business, through the instrumentality of numerous agents, who were allowed forty per cent. of all the money received as membership dues, etc. I do not say that all these things were illegal, but they are matters properly to be considered in connection with others that will now be noticed relating to the charges against the defendant.

While we do not say that the testimony shows that the officers of the association acted corruptly in reference to the issuing of the sixty-four certificates to one person, yet we find that they acted with knowledge of the facts, obtained by an interview with the agent who took the applications, immediately after the first ten of them had been sent to the home office, and that the facts so obtained were such as should have alarmed and put them on full inquiry; but the illegal transactions were permitted to proceed without objection, and seemingly with their full approbation, until the person who held the sixty-four certificates became suspicious, and through the advice of counsel, demanded of the association the return of the $1,268 that had been paid for the certificates. There is a conflict in the testimony as to the conduct of the officers when the demand was made; but the money was not refunded until

eminent counsel had been consulted, and the association then wanted to return the sixty per cent. of the money which it had received, and let the person who had paid it, look to the agent for the forty per cent. which he had retained. On the whole testimony we are satisfied that the officers in receiving the money and issuing the sixty-four certificates, acted with knowledge of both the facts and the law, and therefore culpably. The fact that another association in the same county may be doing business in the same way, is no excuse for the defendant. Under these circumstances we think the defendant should not further exercise its corporate franchises and privileges, and the same are declared forfeited.

There are some matters connected with the incorporation and ' organization of the defendant, which, although not constituting the grounds for the judgment, yet, when taken in connection with the manner in which they have conducted their business, we regard as defects, which may properly have influenced the court in arriving at a conclusion in the case.

The second section of the statute (69 Ohio L. 83) provides that the certificate of incorporation shall specify as follows : 1. The name of such association ; 2. The place of its principal office ; 3. " *The manner of carrying on the business of said association.*"

The certificate in this case leaves the manner of carrying on the business of the association to be such as it may " from time to time prescribe 'by its rules and by-laws," not inconsistent with the state laws. The by-laws provide for their own amendment by a two-third vote of the board of directors. Such an organization is too loose, indefinite, and uncertain. An association through which large sums of money are to be collected and disbursed for benevolent or any other purposes, should be constructed on a more substantial foundation.

Again, I can find nothing in the certificate or by-laws fixing the amount to be paid as an admission fee, so to speak, by a person on becoming a member. Is this a mat-

ter discretionary with the agent through whom the application is made? If so, it should be corrected. The $1,268 collected by the agent for the sixty-four certificates, so often spoken of, seems to have been collected by him, and sixty per cent. of it paid to the association, without express authority either of the statute or any by-law of the association. The testimony shows that the agent received $25 each for about two-thirds of the certificates, and six dollars each for the residue. This cash inducement may have influenced the conduct of both the agent and the association in reference to those unlawful transactions. Be this as it may, the right to collect money by the agent of an incorporated association of this kind, for any purpose whatever, in the absence of statutory provisions on the subject, should be regulated by its certificate of incorporation or its by-laws.

The forfeiture of all its corporate franchises and privileges is declared, and judgment of ouster from its right to be a corporation entered against the defendant.

BOYNTON, J., did not sit in this case.