(Common Pleas, Muskingum County.)

IN THE MATTER OF THE APPLICA-
TION OF THE HOME MUTUAL
AND ASSOCIATION FOR
DISSOLUTION.

The Home Mutual Aid Asociation, find-
ing its plan of operations impracticable,
and that it was, in fact, insolvent, so far as
carrying out its scheme of insurance was
concerned, petitioned for an order of disso-
lution and the order was duly made.

After paying all its indebtedness, except
to its own members on their certificates of
shares in the Association, there remains in
the hands of the receivers for distribution
to members, $4,268.48; the liabilities to
members amounting to over $60,000.00

Matured certificate holders demand pay-
ment as creditors of the Association, from
the fund, in full of the amount shown to be
due them by the terms of their certificates
and the by-laws of the Association, as of the
date of the order of dissolution.

Beneficiaries of deceased certificate hold-
ers demand payment as creditors of the As-
sociation in full of the amount shown by
their certificates and the by-laws of the As-
sociation to be due them as of the date of
the order of dissolution.

Certain certificate holders defaulted in the
payment of the last assessment, and all
other members dispute their right to partici-
pate in the fund to any extent whatever.

All those holding certificates not matured,
and not of deceased members, and who have
not defaulted in the payment of an assess-
ment, contend that with the exception of
defaulting members, the division of the
fund should be per mi et per tout: but that
the defaulting members should receive noth-
ing.

Held.     First — The matured certificate
holders and beneficiaries, holders of certifi-
cates of deceased members, are not creditors
of the Association in such sense as to en-
title them to a preference in payment over
other certificate holders.

Second—The members who failed to pay
assessments did not forfeit their rights to
participate in a dividend from the fund;
their failure to pay being after the Associa-
tion stopped business, and pending its dis-
solution.

Third—The fund should be distributed
pro rata among all certificate holders or rep-
resentatives in proportion to the amounts
paid in on each certificate respectively, ex-
cept, that defaulting members should re-
ceive such pro rata less the amount of as-
sessment defaulted.

Opinion of the Court.
MUNSON, J.

The petition was filed February 7, 1895,
and set forth amongst other things, that F.
J. Terry, I. V. Wing, and others named,
were a majority of the trustees of the Asso-

ciation, a corporation under the laws of the
State of Ohio, and that the association was
organized for the purpose of effecting insur-
ance upon the lives of its members as pro-
vided by the rules, regulations and by-laws
of the Association under its charter.

Also, that the Association was or-
ganized and began business February
27, 1889; that it continued its busi-
ness to the time of filing its petition for
dissolution; the petition, also, sets forth a
history of the doings of the Association,
gives an inventory of the real and personal
estate of the company, and alleges that the
property of the Association is unencum-
bered, and that the only engagements which
have been entered into, which had not been
fulfilled, are the contracts embodied in the
policies or certificates of the Association to
its several members, and sets forth an in-
ventory showing in detail such liabilities.

That the Association is unable to meet
its obligations as they mature, and car-
ry out its contract relations with its said
membership, and that it is impracticable to
further seek to accomplish the objects and
purposes of its creation. The prayer is for
dissolution of the corporation, and that
its creditors, certificate and policy
holders may have equitable relief.
No opposition to the prayer and
petition was made, and A. A. Pat-
terson, Esq., was appointed Referee, and
his report was filed May 14, 1895, and
showed that the allegations of the petition
were true, and that the property of the As-
sociation consisted of certain mortgage
notes, two parcels of real estate, less than
$1,000.00 cash in the treasury, certain office
furniture, and the books of the Association,
and that the debts were to F. J. Terry, on
salary, to the Referee for his services to
date, and the obligations of the company to
its members as members, etc., and on certain
death claims, named, and the Referee re-
ported further that it was impracticable for
the Association to continue its business and
that the Association should be dissolved.
Accordingly, on the 16th day of May, 1895,
the corporation was dissolved by order of the
court, and F. J. Terry and I. V. Wing were,
upon application, duly appointed receivers
of the corporation.

On the 1st day of July, 1895, they filed a
report stating that they had given bond and
duly qualified as receivers by the order of
the court, and had then in bank $1506.55;
that at the date of the order dissolving the
Association, there was due Terry, as secre-
tary, after the death of the late Carr, secre-
tary, October 16, 1894, to May 10, 1895, the
sum of $250.00, and to I. V. Wing for ser-
vices in conducting the business, $20.00,
and to Patterson, as Referee, the sum of
$132.00, and some other specific items of in-
debtedness named, and that the several
parties had requested payment of their
respective claims, and asked authority
to pay such claims, which was gran-
ted. On September 2, 1895, the receivers
filed an application for an order to sell the

real estate and furniture alluded to. On February 17, 1896, the receivers filed another application showing that the company ceased to conduct the business of Mutual Life Insurance after the 20th of January, 1895, because of its inability longer to meet its obligations as they matured, and to carry out its contract relations with its membership, and for such reason it had become impracticable to further seek to accomplish the objects and purpose of its creation, setting forth in the application the filing of the petition for dissolution, and a dissolution of the corporation, the appointment of the receivers, and then alleging in the application that the corporation at the time of such dissolution had no capital stock, and was not possessed of any property or assets except as hereinafter stated. That they, as receivers, had, since their appointment, collected all the assets of the Association, which amounted to $4,268.48; that they had paid all the debts and liabilities of the Association other than the liabilities due and owing to members and holders of the certificates and those claiming under them.

Further, that at the time of the company filing its petition for dissolution, February 7, 1895, the Association had a membership of 216 members; that the 216 members or their legal representatives, heirs or assigns held certificates in the Association which were then in full force and effect, and that the holder of a certificate is entitled, upon maturity of the certificate, to a sum equal to 80c. for each certificate in force at the expiration of such certificate not exceeding the aggregate amount named in the certificate, which amount varies from $1,000.00 to $3,000.00 in the different certificates; that of the 216 certificates, 56 were for $1,000.00, 79 were for $2,000.00, 65 for $2,500.00, 16 for $3,000.00 each; and that it is set forth in each certificate in case the assured die before the end of the time the certificate has to run; then, on notice, etc., his heirs, executors. administrators or assigns, shall receive a sum equal to 80c. for every certificate in force at the time of the death, etc., not exceeding the aggregate sum set forth in the certificate. That after the company ceased to do business, January 20, 1895, and prior to the filing of the petition February 7, 1895, three certificate holders in good standing, namely, Huber, Bowen and Thompson, died, and due ''notice'' was given the company before the order of dissolution, and the appointment of the receivers, May 16, 1895. Two members, Grass and Barron, died prior to the filing of the petition for dissolution, and satisfactory proof of death having been made, notice of two assessments, to-wit: assessments numbered 359 and 360, were duly made by the Association to the members. The time for the compliance with the notice expired February 18, 1895, and 26 of the 216 members failed, neglected and refused to pay either of the assessments; the names of the defaulting members are set out in the Exhibit, attached to the application. That out of the

amount realized from these assessments upon the members who did pay, 80 per cent on the assessments, was paid to the beneficiaries entitled under the certificates of Grass and Barron in full satisfaction of those certificates. That Bailinger died after the filing of the petition, and before the order of dissolution, holding a certificate duly paid up, etc., upon which due notice of death was made prior to the order of dissolution.

That on the day before they ceased to do business, to-wit: January 19, 1895, they gave notice to the 216 members of the Association of an assessment to meet loss by death.

That between the date of the filing of the petition, February 7, 1895, and the order of dissolution, May 16, 1895, Graham, Silvey, Green, Hammond, Haldeman and Lemon became holders of matured certificates.

That since the order dissolving the Association, May 16, 1895, 16 other certificates have expired by limitation, viz.: Oakes, Tipton, Summers, Wells. Varner, Everett, Bowen, Hardwick, Hart, Lovell, Zigler, Royse, Ruth, Ford, Elzroth and Robb.

That of the surplus arising from each assessment after the payment of a death claim on a matured certificate. at least one-half goes to the endowment fund; the residue to the general fund, and that as each certificate provides for the payment of an assessment of $1.00 upon the death of each valid certificate holder, or the expiration by maturity of a certificate. within 30 days from the date of notice of the death or maturity (except that no assessment shall be made at the expiration or maturity of a certificate when the endowment fund is sufficient to pay); and that since, (in the continuance of the business of the Association, as provided by the terms of the certificate, and in accordance with the rules and regulations of the Association), a sum equal to 80 per cent. of the amounts collected on assessments was to be, and was made on the membership of the Association upon the death of each valid certificate holder or the expiration of a matured certificate, and since the sum of 80 per cent. so collected was to be paid and was paid to those legally entitled to receive it, and one-half of the remainder was to be paid and was passed to the endowment fund, and the residue to the general fund, that, therefore, and under and by reason of said article 13, and the said provisions of the certificates, the whole amount of money in their hands as receivers belongs to the endowment fund, having been created by the retirement of 10 per cent. from these assessments, and interest that accumulated upon the endowment fund thus created.

The receivers further represent that they have information of the death of three members who died after the order of dissolution, viz.: Coyne, Conway and Kline.

The receivers say that they are in doubt and uncertainty as to the payment and distribution of the funds remaining in their hands; that various and conflicting claims

are made by and between the different certificate holders to the fund in question; that they desire the direction of the court as to the persons legally entitled to receive the fund or the proportions in which they are entitled.

That the beneficiaries under certificates held by those who died after the business of the Association ceased, and before the filing of the petition for dissolution, claim that they are entitled to receive, upon their claims, the full amount which would have been realized upon an assessment made upon the membership within 30 days from due notice of the death; and that beneficiaries under certificates held by those who died after the petition was filed, and before the order of dissolution was made, claim to be paid in full the amount which would have been realized upon the assessment made upon the membership existing at the time of the filing of the petition praying for dissolution, and that beneficiaries under certificates held by those who died after the order dissolving the corporation claim that they are entitled to be paid in full the amount which would have been realized upon an assessment made upon the membership existing at the time of the filing of the petition praying for the dissolution, and the holders of certificates expiring by limitation after the filing of the petition, and before the order of dissolution, claim they are entitled to the full amount which they would have realized if assessments had been made upon the membership as it existed at the time of the filing of the petition; and that the certificate holders, whose certificates expired after the dissolution, claim that they are entitled to receive from the funds in the hands of the receivers the full amount which they would have received if an assessment had been made upon the membership as it existed at the time of the filing of the petition, and the defaulting members under assessments numbered 359 and 360, claim they are entitled to participate in the distribution of the funds; that some of the certificate holders claim that the fund in the hands of the receivers should be distributed among the several members or holders of certificates in proportion to the amount of dues and assessments paid in by the respective members: that the members who did not default in the payment of assessments numbered 359 and 360. claim that beneficiaries under certificates held by members who had died since the business of the Association ceased, and the holders of certificates which have expired by limitation since the business of the Association ceased, are entitled to no preference in the division of the fund, and the certificate holders who paid the assessment numbered 359 and 360, claim that the defaulting members under the two assessments are not entitled to participate. in any manner, in the distribution of the fund.

The question presented for the court is. "How shall the receivers distribute the $4,268.48 in their hands for distribution?

The claims presented by certificate holders on this hearing may be divided into classes:

First.—Those who hold matured certificates. Second—Those who hold unmatured certificates. Third—Beneficiaries who hold certificates of members deceased prior to the order of the dissolution. Fourth—Those who did not pay the last assessments. These respective claims will be considered in their order. Those holding matured certificates claim, by virtue of their contract of membership, that, from the fact that their certificates or contracts have run for the required period of years, and that all dues and assessments have been fully paid for that period of time, that within the limits prescribed in their certificates, they are entitled to receive the full amount thereof, because the matured certificate holder upon maturity of his certificate, ceased to be a member, and became a "creditor" of the corporation. On the other hand, the unmatured certificate holders claim that, inasmuch as the order of dissolution was made on the ground that the Association was, in fact, an insolvent corporation, (and the fact being that it was insolvent), that the assets were owned by all the members, *per mi et per tout*, and should be divided among them in proportion to the amounts paid in by them, regardless of the fact that by the terms of the certificates, the matured certificate holders had complied with the terms thereof, and were apparently entitled to a sum not exceeding the amount limited in their certificate.

Beneficiaries who held certificates of members deceased before petition for dissolution or order of dissolution, claim that at the death the interest shown by the certificate became vested and absolute, and such beneficiary became a "creditor" of the company to the amount stipulated to be paid by the company.

The defaulting certificate holders claim that they had a right to default, because the levying of the assessments complained of, with knowledge of the officers that the company was to discontinue business shortly, if not immediately thereafter, because of failure, was an unreasonable exercise of their discretion in that regard, and was therefore illegal, and that consequently they were not bound by such notice.

The charter of the Association provides for memberships. That each member received shall pay a stipulated entrance or membership fee of not over $10.00; assessments after the death of a member. or at the expiration of a stipulated number of years for maturity of certificates not over $1.00 for each death or matured certificate; and stipulated annual dues for at least two years after the date of certificate of membership, of not over $2.00. He shall pay to heirs or holders of matured certificates, as the case may be, a sum equal to eighty cents for each certificate of membership in force at the death, or maturity, etc., not in the aggregate, however, greater than the amount named in the respective certificates.

The by-laws which bear upon the ques-

tions here involved, are Articles 13 and 16. Article 13 provides as follows:—"Of the surplus arising from each assessment, after the payment of a death claim or matured certificate, at least one-half shall go to the endowment fund, the residue to the general fund."

Article 16 provides:—"On the death of a certificate holder, each valid certificate holder shall pay into the treasury one dollar within thirty days after notice of assessment, or forfeit his or her certificate." ·

The "Certificate of Membership" issued to each member, provides in substance that in consideration of $10.00 paid, and $2.00 to be paid annually, and a $1.00 assessment to be made on death or maturity, the corporation agree to pay to A. B., in a given number of years, or, upon his death before the time, to C. D., or his heirs, executors, administrator, or assigns, a sum equal to 80 per cent. for each certificate in force at the time of death or maturity. No assessment to be made at maturity of a certificate when the endowment fund is sufficient to pay the said certificate. If assessments are not paid in 30 days after notice, certificates to be null and void, and all payments made to be forfeited.

It is conceded that the fund in question was created by the retirement of 10 per cent. from assessments made, and interest accumulated upon the fund thus created; and this fund is alleged by the receivers in their application to be all the money in their hands for distribution, and that it all belongs to the endowment fund.

As to the claims of matured certificate holders, that they have a "contract" by their certificates, which entitles them to a preference over unmatured certificate holders, it is thought they have no contract, and that their certificates of membership, together with all others issued by this corporation, are void.

If they were "contracts at all, they are to be regarded as "contracts of life insurance (38 Ohio St. p. 282); but an examination of them will show they are payable on death to the beneficiary named, or executors, administrators or assigns.

"Such a contract of insurance to pay, in case of a members death, to himself, or "assigns, to his 'estate, to his 'executors or administrators, or to any person, whether relation or not, who is not of his family or heirs, is against public policy and void. The State v. Standard Life Association, 38 Ohio St. 282, syllabus 7.

In the case of The Central Ohio Mutual Relief Association, 29 Ohio St. 399, it is held, "Mutual Relief Associations, incorporated and organized under the Act of April 20th, 1872, as amended February 3rd 1875, are not authorized to provide for the payment of stipulated sums of money to persons other than family or heirs of a deceased member.

Gilmore, Justice, says, p. 404—5, "Such associations are to be incorporated for the mutual protection and relief of its members,

and for the payment of stipulated sums of mnoey to the families or heirs of the deceased members of such associations. * * The only beneficiaries for whom it has power to provide, are the families or heirs of deceased members. The beneficiary named in each certificate must be an heir of the family of a deceased member. A certicfiate naming any other person, or issued to a proper person and assigns is unauthorized.

To the same effect is the case of The State v. Peoples Mutual Benefit Association, 42 Ohio St. 579. In that case, on page 582, Owen, Justice, says, "It seems clear that the beneficiary named in each certificate must be an heir, or of the family of the deceased member.

"If the named beneficiary may assign his interest in the certificate to a stranger, who may thereby become invested with all the rights of his assignor, that maybe effected by indirection, which is not permitted by direct means, and might result in the creation of a class of beneficiaries, neither contemplated nor authorized by defendants charter. We are not now discussing the right of a beneficiary to assign his matured claim, matured by the death of the insured member, or other matured claim, but the right of a named beneficiary, during the life of the insured member, to endow those who are neither of the family, nor can become heirs of the insured, with all the rights of the beneficiary. Such form of certificate is unauthorized.

In the case of National Aid Association v. Gouser, 43 Ohio St. on p. 5, Owen, Justice, says: "That the plaintiff in error had no power to issue certificates of membership payable on the death of the insured member, and that such certificate is void, is too well established to admit of controversy, citing the foregoing cases.

If, then, the "certificates under and by virtue of which these matured certificate holders claim to have "contracts," and "contractual rights" for preferences are void such holders have no "contracts" or contractual rights for a preference, but are entitled to a pro rata payment only on what they have paid into the company, in common with all other so-called members of the association. They, with others, have paid money into the coffers of this company under a mistaken idea that it was paid upon a contract with the company for their, and all their mutual benefit, when in fact it was money paid the company under a supposed contract, and not under any valid contract whatever.

If they have no "contract" rights they cannot become "creditors" of the corporation in such sense as to entitle them to a preference in the fund as against rights of the members.

But suppose I am wrong in this view and they have "contract" rights. Even then their rights are as "stockholders" and under section 5668, Rev. Stat., of Ohio, they would be entitled with all other certificate holders to a pro rata share is the fund only,

If I am wrong in this view, also,—Are they such "creditors" as entitled them to be paid in preference to other members, out of this fund? The Association was incorporated, and issued its first certificates in 1879. The first certificates matured twelve years thereafter, or in 1891 or 1892. It was then, apparent, (or should have been on careful consideration), that the plan or scheme upon which the association was organized, was impracticable. So many certificates rapidly maturing thereafter must necessarily exhaust the assets of the association, and leave nothing of an endowment fund for after-maturing certificates, true quite a large number of matured certificates were paid after that. Still it is conceded that the plan or scheme upon which the association was founded was demonstrated to be impracticable and that the association would have to quit business sooner or later unless the endowment feature was relinquished by the members. The scheme being in fact impracticable from its inception and not capable of accomplishment, there was no time in the existence of the association when, in view of its obligations, it was solvent.

The number of assessments requisite to pay the amount of certificates as they matured, could not be collected from the membership within the number of years limited. That the association was insolvent at the date of the filing of the petition is shown by the allegations of the petition itself. The assets of the association May 16, 1895, when it was dissolved, did not amount to $5,000, while on that day its outstanding obligations on matured certificates and death claims, and matured certificates was over $60,000, and this was substantially its condition at the maturity of the matured certicates. Hence, having in view the obligations that thereafter were to mature, the association was then insolvent. At that time, it could not have paid matured certificates, with any possibility of leaving funds that would pay subsequently maturing certificates in the same manner and to the same extent.

As before stated, the purpose of the association had failed of accomplishment. The only course left open to the members to continue longer in the business was suggested by the State Superintendent of Insurance. Viz:—That members waive their rights to endowment. This was refused, and that left nothing for the officers of the association to do but make an assignment, or petition for dissolution, under section 5651, etc. There was no course for them honestly to pursue but to wind up the association, which they proceeded to do under and by virtue of chapter five on dissolution of corporations, Revised Statutes of Ohio.

The claim of holders of matured certificates, that they are "creditors," and should be paid in full, is based upon article 13 of the by-laws, and a provision in the certificate of membership providing for an endowment fund for matured certificates, and

upon the report of the receivers that the whole amount of money in their hands belongs to the endowment fund which was created by the retirement of 10 per cent. from the amount realized from the assessments, and interest on the fund thus created. But their claim is to be determined not only upon the consideration of the by-laws and statements in the certificate, and the fact that the fund on hand has been derived as reported by the receivers, but, also, upon fair consideration of the obligations of membership in a mutual benefit association assumed by each member accepting a certificate. If the association is prosperous, and continues in the business venture all engage in when they became a part of the partnership or association—the holders of matured certificates have a right, under certain limitations and restrictions, to demand and receive their proportionate share of the accumulated fund; but, if bad investments are made, or losses are sustained, if insolvency intervenes, or, for any other reason, as, for instance, this order of dissolution made, the association changes its character from that of a benefit to that of a burden on its members, before actual withdrawal; why, then, must they not bear their just proportion of the loss to other members resulting from the failure of the common enterprise? The right to a withdrawal of a sum of money by holders of matured certificates, presupposes that a relative proportion of the assets of the corporation remain for the benefit of those who continue to be active members of the association; that is implied in the very act of becoming a member of the association. It cannot be implied from the certificates and article 13 of the by-laws, and the fact that the fund in hand is the accumulation of endowment money, that a holder of a matured certificate, matured on the eve of failure and dissolution, should have a lien on, or a vested interest in, the endowment fund; because the fund accumulates, on the theory that the association will continue and accumulate other and further endowment funds for the purpose of meeting certificates to mature in the future.

Under the provisions of the statute for the dissolution of corporations, holders of matured certificates and beneficiaries of deceased members could only be paid in full, in case their status was that of "creditors" of the corporation; but it is only in a qualified sense in any view, it seems to me, that the holders of matured certificates or beneficiaries of deceased members are "creditors" of the association. Their rights as against those with whom they have been associated, are very different from the rights of general creditors whose claims are based on outside transactions. "A member of an incorporated beneficial society does not stand in the relation of a creditor of the society. St. Patrick's Benevolent Society v. McVey, 92, Pa. 510.

The holders of certificates, matured or unmatured, are equally meritorious; none are entitled to priority over others, because

the claims of each are alike based upon their relation to the associsation as members, and upon their relations to each other as members of a beneficial society.

In coming to the conclusion I have, I concede, in this part of the opinion—for the purposes of a full consideration of all the points made for the so-called creditors—all that is claimed for contractual rights, so far as contractual rights bear upon or affect the issue here to be determined. But the contractual relations between the members of this association do not go far enough to meet and provide for the case here made. The contract between the mnmbers and the association and between the members in their relation to one another do not touch upon a state of affairs in which the association. cannot possbly meet its obligations, but directly contrary: they provide for a state of solvency when the association can meet all its obligations, and do not provide for a state of insolvency when it can not fully meet any of them which relate to the endowment feature of the association. This claim of contractual rights rests largely, if not wholly, on the legal entity of the association, as a corporation. But we are not dealing with a question between the member and the thing called a corporation—but between the members themselves and this fund.

The corporation was for the purposes of life, not death: growth, not dissolution; accumulation, not distribution.

"That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for its convenience in the transaction of its business and of those who do business with it; but like every other fiction of law, when urged to an intent and purpose not within its reason and policy, may be disregarded. Ohio ex rel. Watson, Att'y General, v. Standard Oil Company, 49 Ohio St., 137.

I have called attention to the fact that this corporation was a failure from its inception; while still a "going concern," it was impossible for it to do what it was incorporated to do. The legal entity of this corporation may be disregarded because urged to an intent and purpose not possible within the purview of this charter.

The status, then, of the natural persons who compose this corporation to one another must govern the determination of these questions, not the certificates of membership, or contract of the corporation with each member.

All have an interest in the "endowment fund," because all contributed to it with a view that the fund should meet matured certificates, thus rendering it certain further assessments would keep the same fund full to meet their certificates when they matured.

And, even admitting matured certificate holders "creditors", the corporation could not "prefer" them, because the corporation is insolvent. Rouse, Trustee v. The Merchants National Bank of Cincinnati, 46 Ohio St. 493. "The right of the individual debtor to prefer one creditor to another, though at the time insolvent, rests upon his complete dominion over, and consequent unrestricted power of disposition of his property.' Ib. p. 499. The only "creditors" this company is expected to have beyond those for running expenses are its own members. If they are "creditors," they are all creditors: if all creditors, they must be treated without preference. If insolvent, the corporate property is a trust fund for the equal benefit of the corporate creditors in proportion to the amounts of their respective claims

If matured more than unmatured "creditors," may be preferred then the trustees may continue the company along, until certain favored certificates, mature then have the company dissolved, thus preferring such holders to the exclusion of others equally meritorious as creditors

This association is, in fact, and in law, in the nature of a partnership, with corporate rights in which every certificate holder is a member; and yet unlike a partnership in that no profit as such is expected; its design is only to accumulate a fund from the contribution of its members. Such associations as this, are considered philanthropic or benevolent in character; rather than associations for gain or profit; and in that view, the implied understanding is, that the holder of a matured certificate would be entitled to receive full payment when, and only when, the association is in condition to pay such holders. and reasonably provide for the payment to those who come after them, and who would then be reasonably or probably likely to receive a similar amount.

It would cetainly be inequitable in a fraternal beneficial society, where mutuality is the basis of the contract, that a member whose certificate matured the day before dissolution, should receive the maximum amount named therein, and the member whose certificate would have matured the next day should receive comparatively nothing in the distribution of the funds of an insolvent association of this character. The equitable maxim "equality is equity," should apply, and I believe does apply. In Niblack on Beneficial Societies section 123, p. 239, it is said: 'It may be stated on principle and authority that when a corporation is virtually dead, although the term of its existence as limited by law has not expired, and it has in its possession property or assets which can not be used in carrying out the purposes of its organization, courts have jurisdiction to distribute such property and assets among its members or beneficiaries upon such a basis as shall be just and equitable."

In reaching this conclusion I have not overlooked the fact that the fund has been treated by the officers of the association as all endowment fund. But that does not in my opinion, under the view I have taken, change the status of the matured certificate holders to such fund in an insolvent corporation. The officer of the company cannot so treat its assets or characterize them to prevent their being the "property of the

member." I have not overlooked, either, the language of the certificate, together with the language used in Article 13, looking to the same matter. The certificate is not an absolute undertaking to pay the sum mentioned therein upon the expiration of the time named. The words "not to exceed" were put into the certificate for the purpose of limiting the obligation of the certificate, and the amount to which the member at the time of the maturity of the certificate should be equitably entitled in view of the then condition of the association.

The scope of the association undoubtedly contemplated payment of the amount limited in the certificate, but that was always subject to the condition that the scope of the association would be accomplished in view of the nature of the association. It was natural the originators of the association scheme should insert the words "not to exceed," for the purpose of limiting the right of the member to receive an equitable proportion of the assets if it should be demonstrated that the Association failed to accomplish its purpose.

In the case of the "Fraternal Guardian's Assigned Estate," 157 Pa. 594, 598, it is said. "what is meant by a sum not exceeding? Is this merely a maximum limit of the amount to be paid to the certificate holder? Can it be argued that a contract to pay any amount not exceeding a certain sum is a contract to pay that sum? The mere interrogatory suggests its absurdity. It was intimated at the argument that a sum not exceeding $625.00 might mean 5 cents; true enough, it might, but in an uncertain matter like this, the law in its wisdom would say that this meant a sum which could be reasonably paid with due regard to all the circumstances of the case."

The reason presented by the holders of matured certificates for payment in full, that they have ceased to be members, and have become creditors of the corporation, is not sound, because from what has been said, it will be seen that they cannot escape the liabilities arising from being members of an insolvent corporation, and that the insolvency fixes their status to the fund in question; they could not have any vested or equitable interest in such fund as would do away with such liability or give them any other or greater interest in the fund.

The second class, or beneficiaries who hold certificates of members deceased prior to the order of dissolution, stand in no better position than the holders of matured certificates. Upon the death of a member, his heirs became entitled to a sum equal to 80 per cent. for every certificate in force at the time of the death not to exceed the amount named in the certificate; that placed such heirs or beneficiaries in no better relation to this fund than that of the matured certificate holder; and for the same reasons, that their claim to be considered as creditors are overruled, so must this of the beneciaries be. The heirs or beneficiaries are entitled in this

matter to a dividend on the amount paid in, and no more.

On dissolution, death losses must be paid pro rata, although an assessment for a particular loss has been made, and collected, but not paid over. Ellerbe v. Associations, 106 and 114 Mo. —, cited by Niblack, Beneficial Societies, p. 238.

There are cases as to insolvency of Mutual Insurance Companies, seemingly in conflict with the results reached in this case. Such a case is Nannatta v. N. J. Mutual Life Insurance Company, 31 N. J. Eq., 15; Meyer v. Attorney General, 32 N. J. Eq., 815.

But while both are "insurance companies", there is an essential difference between a Mutual Life Insurance Company and a Beneficial Society such as this Home Mutual Aid Association. While the contracts are technicall "insurance contracts," there s a wide difference between their objects and purposes.

In Commonwealth v. Equitable Benefial Association, 137 Pa. St., 412 (1890), Mr. Justice Clark, delivering the opinion, states the difference. He says, "The general object or purpose of an insurance company is to afford indemnity or security against loss its engagement is not founded in any philanthropic, benevolent, or charitable principle; it is a purely business adventure, in which one for a stipulated consideration or premium per cent. engages to make up, wholly or in part, or in a certain agreed amount, any specified loss which another may sustain; and it may apply to loss of property, to personal injury, or to loss of life. To grant indemnity or security against loss for a consideration is not only the design and purpose of an insurance company, but it is also the dominant and characteristic feature of the contract of insurance. What is known as a beneficial association, however, has a wholly different object and purpose in view. The great underlying purpose of the organization is not to indemnify or to secure against loss; its design is to accumulate a fund from the contributions of its members, for beneficial or protective purposes to be used in their own aid or relief in the misfortunes of sickness, injury or death. The benefits, although secured by contract, and for the reason to a limited extent assimilated to the proceeds of insurance, are not so considered. Such societies are rather of a philanthropic or benevolent character; their beneficial features may be of a narrow or restricted character, the motives of the members may be to some extent selfish, but the principle upon which they rest is founded in the considerations mentioned. These benefits, by the rule of their organization, are payable to their own misfortunate, out of funds which the members have themselves contributed for the purpose, not as an indemnity or security against loss, but as a protective relief in case of sickness or injury, or to provide the means of a decent burial in the event of death. Such societies have no capital stock; they yield no profit, and their contracts, although bene-

ficial and protective, altogether exclude the idea of insurance, or of indemnity, or of security against loss.''

To the same effect:— N. W. Masonic Aid Society of Chicago v. Jones, 154 Pa. 99; 159 Pa. 158 and 279; 165 Pa. 292; Fischer v. Am. Legion of Honor, 168 Pa. 279.

In Fraternal Guardian's Assigned Estate, 159 Pa., 594, the court say the contention was between holders of matured and unmatured certificates; and exceptions were to refusal to award a fund in hands of assignee to holders of matured certificates. The court said, ''In view of the insolvency of the Order, the distribution made by the court below, is just and equitable.''

I have been cited by counsel for holders of matured certificates to the case of Charter and v. Briggs, 16 Colorado, Rep., 19; (25 American State Reports, 234.) That case holds, among other things, that ''A certificate of membership in the Ancient Order of United Workmen, is to be treated in law as a certificate in a mutual life insurance company, and that such certificate is to be regarded as a written contract and, so far as it goes, determines rights, etc. It is thought that case is not authority against any holding here made.

The case of Collier v. The Steamboat Captain's Benevolent Association, vol. 1, Law Bulletin, 18, etc., Superior Court of Cincinnati, has been cited.

That case relates to the distribution of funds of a benevolent incorporated association, but not to the distribution of the assets of an insolvent one.

The case of Pillazino, Guard. v. The German Catholic St. Joseph's Society, 16 Law Bulletin, 27, Superior Court of Cincinnati, relates to the right of the benevolent society by amendment to a by-law to so modify the contract of membership, as to repudiate the debt, or sick benefits due to a member; but no question arising under the insolvency of the society was made in that case.

The case of O'Brien, Administrator v. Home Benefit Society of New York, 117 N. Y., p. 310, is not in point. That case is to the effect that on a policy of life insurance on refusal to make an assessment to pay a death claim, the company may be sued in an action at law for breach of contract. No question of distribution of funds of an nisolvent benevolent association is made.

Niblack on Benefit Societies, Sections 204, 205, 333, and 171, are cited. None of those references relate to insolvency of mutual insurance companies.

The case of Taylor v. North Star Mutual Insurance Company, 48 N. W. Reporter, p. 772, (Supreme Court of Minnesota, 1891), relates to mutual fire insurance companies, and holds that policies on which losses have not occurred are not debts or fixed liabilities of the company; and that losses occurring after the appointment of a receiver to wind up the affairs of an insolvent mutual insurance company cannot be proved and allowed as claims against the company by the receiver.

The other class of certificate holders, alleged to have defaulted in the payment of assessments, are entitled to a dividend on the amount paid in by them, less the amount of the last assessments paid by the other members.

I am aware of the general doctrine relating to forfeitures in insurance cases, and that in The Manhattan Life Insurance Company v. Smith, 44 Ohio St., 166, Spear Justice, says, ''For the very life of successful life insurance depends upon prompt payment of premiums,'' etc. Still, in this particular case, it would seem to me inequitable in view of the insolvency of this association, and the levying of assessments with knowledge on the part of the company that it must, and was about to, discontinue business, to hold these members to a strict forfeiture for non-payment of these assessments

In the case of Burden v. The Massachusetts Safety Fund Association, reported in Lawyers' Annotated Reports, Book 1, page 147, the court hold that ''A certificate is not forfeited by reason of its failure to pay monthly dues after the association stops business, and pending its dissolution.''

In the matter of Equitable Associaion, 131 N. Y. 35, it is held the pendency of a suit was a sufficient excuse for the members who failed to pay the last assessment; cited by Niblack, Beneficial Society, 237.

The funds will be distributed to all its members holding matured or unmatured certificates, and, beneficiaries who are of the family of the deceased member respectively, pro rata, on the amount paid into the company on each certificate, excepting that those members who failed in payment of the last assessments, will receive dividend, less the amount of such assessments.

F. H. Southard and George Brown, attorneys for Receivers.

Achauer & Gates, John W. King, J. R. Stonesipher, Evans & Reed, R. H. McFarland, H. R. Stanberry, John G. Reeves, attorneys for the various claimants.