(Cuyahoga Co. O., Common Pleas, 1901.)

## HORACE FULLER v. CLEVELAND CITY RAILWAY COMPANY et al.

1. Corporations, having in their keeping the primary evidence of the title to their stock and having charge of the transfer thereof, are held to the exercise of diligence in its preservation for those who own it; and where stock stands in the name of a trustee, the corporation, knowing this, is bound to inquire as to the authority of the trustee to make transfer of the stock, before it permits such transfer to be made upon its books.

2. Where several street railway companies are consolidated into one company, the new company sustains a trust relation to the holders of the stock in the constituent companies, with reference to the new stock and its distribution to them.

3. Where such consolidated company issues one certificate for all the new stock allotted to the shareholders of one of the constituent companies, to an individual *as trustee*, to sell sufficient thereof to liquidate the floating indebtedness of the constituent company, and to distribute the residue to those entitled to it, the new company is bound to see to the faithful execution of the trust it so creates, and is liable for any default of such trustee.

4. In an action against such consolidated company, by one entitled to a portion of the new stock, the statute of limitations does not begin to run until there is demand of the stock, and refusal to 'eliver.

PHILLIPS, J. (Orally)

This case involves, and turns upon, the question as to whether the Cleveland City Railway Company, formed by the consolidation of two other companies, or the stockholders in one of the constituent companies, shall suffer the consequences of the fraudulent diversion and disposition of the part of the stock of the new company that was allotted to the shareholders in the cable company, one of the two constituent companies. This stock was turned over by the new company to Robinson and Shipherd, as trustees, to be applied, first, to the payment of the floating indebtedness of the cable company, and the residue distributed among the shareholders of that company, in proportion to their holdings of the old stock.

There is very little dispute about the facts in the case. I think the determination of the rights of these parties requires a determination, first, of the question whether the statute providing for the consolidation of such companies, and the proceedings thereunder for consolidation, shall be strictly or liberally construed, and, secondly, whether the duties that a corporation, and especially a consolidated company, owes to its shareholders by virtue of the fiduciary relation between them is to be

rigidly enforc d or otherwise. I have examined a great number of cases, with a view of determining these questions as a starting point in determining this case.

There is some contrariety in the decisions of the courts upon these questions, but if I am not mistaken, the clear general trend of the decisions is in the direction of a strict construction of such statute and the proceedings under it, and a rigid enforcement of the duties of the corporation to its stockholders, growing out of the trust relation. And I think the holdings in Ohio are about as strong in that direction as those in any state whose decisions I have examined.

In 1893, two street railways in this city, the Cleveland City Cable Railway Company, and the Woodland Avenue & West Side Railroad Company, were consolidated, and became the Cleveland City Railway Company, commonly called "The Little Consolidated." The consolidated company, in providing for the conversion of the capital stock of each of the consolidated companies into that of the new company, issued a single certificate for all that part of the new stock allotted to the stockholders of the cable company—to-wit, 18,250 shares—to John J. Shipherd and Frank De-Hass Robinson, as trustees. Substantially all of this stock, upon the breaking up of said single certificate, went into the hands of Shipherd, who distributed to some of those entitled, and defaulted as to others, including the plaintiff, who was the owner of one hundred shares of the preferred stock of the cable company, and who, never having received his portion of the capital stock of the consolidated company, brings this action to recover such stock, or its value.

The plaintiff claims that the issuing of said certificate was not authorized, and that the loss occasioned by the default of Shipherd must fall upon the consolidated company. The company claims that the issuing of such certificate was authorized, first, by the preliminary agreement entered into by the stockholders of the cable company whereby they agreed to deliver their stock in that company to said Robinson and Shipherd, "to be exchanged for stock of the consolidated company;" and, second, by the agreement of consolidation, which provided that the 18,250 shares allotted to the stockholders of the cable company should be distributed *to the cable company*, to be applied, so far as necessary, to be distributed among the holders of its stock. The company further claims that if the plaintiff has a right of action, it is barred by the statute of limitations.

On May 10, 1893, the stockholders of the two constituent companies entered into a prelimin-

ary agreement, providing, among other things, that each of the constituent companies should pay off all of its floating indebtedness on June 1, 1893, so that when the consolidation goes into effect on that date, each shall be clear and free from all indebtedness beyond the two million dollars bonded indebtedness that was to be assumed and paid by the new company; and some other indebtedness for supplies, equipments, and so forth, was therein provided for. Omitting the part of it that relates to the west side company, here is the part that is material in this case: "The undersigned stockholders of the Cleveland City Cable Railway Company hereby appoint and irrevocably designate Frank DeHass Robison and John J. Shipherd as their agents and proxies to carry out this agreement and perfect said consolidation; that they are hereby authorized to attend any and all stockholders' meetings of th Cleveland City Cable Railway Company, called for the purpose of carrying out the terms of this agreement, and to vote all the stock standing in the name of each of the undersigned in such manner as they shall find necessary to carry out and ratify all of the purposes of this agreement; and each of the undersigned stockholders in said company hereby agrees to deliver to said two persons, or their chairman, at such time as they may designate, all of the stock held by him, to be exchanged for stock of the consolidated company in proportion to the respective holdings of each, as each shall be entitled to receive the same."

This was merely a tentative agreement, having no legal effect, and was simply preliminary to the consolidation agreement proper, which is authorized an ' required by law for effecting such consolidation. Such preliminary agreements are quite common as the first step of consolidation, in order to ascertain about what terms of consolidation would be approved by the old stockholders after they might be agreed upon by the directors. Such preliminary agreement, as I say, has no legal effect in and of itself. It is purely preliminary.

Section 3381, Revised Statutes, under which this consolidation was enacted, provides, that:

"1. The directors of the several companies may enter into a joint agreement under the corporate seal of each company for the consolidation of the companies and prescribing the terms and conditions thereof, the mode of carrying the same into effect, the name of the new company, the number of directors and other officers thereof and their places of residence, the amount of the capital stock of the new company agreed upon, the number of shares of capital stock, the amount of each share and the manner of converting the capital stock of each of the constituent companies into

that of the new company, with such other details as they may deem necessary to perfect the new organization and consolidation of the companies.

"2. The agreement shall be submitted to the stockholders of each of the companies at a meeting thereof called separately for the purpose of taking the same into consideration;" and so forth.

On May 11th, the next day after the preliminary agreement, the directors of the two constituent companies entered into an agreement of consolidation, pursuant to the statute, which provided that the capital stock of the new company should be eight million dollars divided into shares of one hundred dollars each, 18,250 of which were allotted to the shareholders of the cable company, and 51,750 shares were allotted to the shareholders of the west side company; one million dollars of the capital stock being reserved in the treasury. And it provides that these 18,250 shares "should be distributed to the Cleveland City Cable Railway Company, party of the second part, to be disposed of by said company so far as necessary, to liquidate its floating indebtedness, and the remainder to be distributed among the holders of the common and preferred stock of said company in proportion to the present relative value of such preferred and common stock."

This agreement of consolidation was afterward approved by the requisite proportion of the stockholders of the two constituent companies, and the other requisite steps were taken to complete the consolidation, whereby the new corporation was created and the old ones extinguished.

The cable company had a floating indebtedness of $421,621, which, by the terms of both the preliminary agreement and the agreement of consolidation, was to be paid by that company on June 1st, at which time the consolidation was to go into effect. There is a provision to that effect in the agreement of consolidation, notwithstanding the provisions I have just read in regard to the liquidation of the floating indebtedness.

Thereafter, and on June 16th, the new company issued one certificate for said 18,250 shares to Robison and Shipherd, as trustees. This certificate was from time to time broken up by them and the floating indebtedness of the cable company was all, or nearly all, paid from said stock; some of the stock was transferred to the old stockholders, and the rest of it was transferred to Shipherd individually, or to him as trustee, and was by him diverted to his own purposes, in violation of his trust and in fraud of numerous holders of the old stock, including the plaintiff, Fuller. Some of this

stock went to Robison, and I don't understand that it is claimed here that more of it went to him than he was entitled to, in virtue of his individual holdings in the cable company. It appears that all of it, not accounted for pursuant to the trust that was created, was diverted by Shipherd. It would not make any difference, for the purposes of this case, whether the diversion was by Shipherd or by Robison. It will be seen that the practical question here is, who shall bear the loss occasioned by the default of Shipherd, the defrauded stockholders, or the consolidated company?

It was the duty of the directors of the old companies, in the making of the agreement of consolidation, to "prescribe the manner of converting the capital stock of each of the constituent companies into that of the new company." That is the language of the statute. This was done, and their action was approved by the stockholders. This being done, it became the duty of the new company to carry out such prescribed plan and method; it could not adopt another method, or vary the one prescribed, without responsibility for resulting loss. I think this must be a fundamental doctrine of this case. Primarily, the obligation would rest upon the new company, upon its organization, and the issuing of new stock, to deliver such new stock to the parties entitled to it. The statute says that in the agreement of consolidation that transaction shall be provided for; and being so provided for, the method of doing it is prescribed and fixed. The agreement provided for a distribution of the new stock by delivery thereof *to the cable company;* that is, to one of the constituent companies. It may be doubtful, and I think very doubtful, whether this provision is valid, or whether it could be carried out. My judgment is, that upon the complete creation and organization of the new company, the old company ceased to exist, except so far as the statute says they shall be deemed to remain in existence for the protection of certain rights of certain classes of creditors.

In another case growing out of this consolidation, Judge Neff, of this court, delivered a very full and a very well considered opinion on a demurrer and motions addressed to the petition, I believe *Robison* v. *Railway Co.,* 5 N. P., 301. That case was unlike this case in its nature, but in disposing of the questions in that case, Judge Neff states his view of this question. I read with approval a short extract from his opinion. He refers to the statute which says that the old companies shall be deemed to be in existence, to continue in existence, for certain purposes, and he cites then several cases, with quotations from them, most of which are mere *dicta,* several of them

from opinions of our own Supreme Court, and some of them from the United States Supreme Court, to show that the effect of the complete organization of the new company is to entirely extinguish the old companies. Judge Neff takes the view, and I concur with him, that after that has been done it is very doubtful whether it is within the power of the new company to continue one of the old companies in existence as an agency for the distribution of stock. After these citations, Judge Neff says:

"From these authorities, as well as from the construction of the statute, it seems to follow that the corporate existence of the constituent companies ceased upon the consummation of the consolidation. The consolidation became and is a corporation. If the constituent companies remain such, you have three corporations co-existent, coetaneous, one of which owns all of the property, franchises, etc., and the others are kept alive by mere fiction of law for the protection of creditors. From this it would result that the constituent companies were extinguished by the consolidation. Agreeably to this idea, then the original agreement, the articles of consolidation, when construed in connection with the statutes of the state, may be said to provide," that is, the original agreement, "that the certificates of stock in the new company—it will be remembered that I called attention to the distribution according to the amount that each held of the stock of the constituent companies—the distribution of the stock of the new company should be made; it was distributive in its character.

"It may be held then, it should be held, I think, that the stock of the new company should properly be delivered to the stockholders of the constituent company or to their authorized agents, and that upon the surrender of the old certificates, and not to the officers of the constituent company as such. For if the constituent companies had ceased, then surely their officers would not survive.

"It would result from this, that the issue of new certificates to Shipherd without the surrender of the old certificates was unauthorized, unless Shipherd was the agent of the parties, in which event, delivery to him would be a delivery to them. Assuming now, that such relation of agency did not exist, such unsurrendered cable stock still outstanding, would constitute an obligation of the defendant company, either to issue stock to that amount, or to compensate its holders for its value in money."

If this provision in the agreement of consolidation was valid, the new company departed from it, by issuing this stock to Robison and Shipherd, trustees, instead of turning it over to the cable company, as provided in the

agreement. If this provision was not valid, because of the non-existence of the cable company, or any officers thereof, then the primary obligation of the company required it to deliver the stock to those entitled. In such case, the company should have deducted sufficient from the 18,250 shares to liquidate the floating indebtedness of $421,000 and exchanged the residue for the old stock of the cable company.

I am strongly inclined to the view that the statute providing for consolidation contemplates and authorizes the delivery of the new stock, only upon the surrender of the old certificates of stock in the constituent companies. This a requirement, as will hereafter appear, in the ordinary transfer of stock in the same company. I don't know whether there is a provision of the statute for it or not, but all certificates of stock, so far as I know, contain the provision that it shall be transferable on the books of the company upon the surrender of this certificate properly indorsed. The certificates themselves generally, and perhaps always provide that they are transferable upon the surrender of the old certificate. In no other way can the rights of owners of stock be protected; for a certificate may be in the name of one person, and the ownership be in another: As where stock has been pledged, or where the registered owner has died, and the title has devolved upon his representative.

It is claimed in argument, that if the provision for distributing stock to the cable company was invalid, the issue thereof to Robinson and Shipherd was authorized by the terms of the preliminary agreement, as they were adopted into, and made a part of the agreement of consolidation.

I think this claim fails of support, either as to the adoption of that part of the preliminary agreement, or as to the meaning and effect of the terms of that agreement. It seemed to be conceded upon the hearing, that the preliminary agreement had been adopted into the agreement of consolidation, as to all matters not otherwise provided for in the agreement of consolidation; but upon examination of the agreement of consolidation, I find the only reference of this kind is in these words:

"The adjustment of all other property matters remaining between the two constituent companies and the consolidated company shall be adjusted pursuant to a memorandum of agreement entered into by the holders of more than a majority of the stock of said constituent companies, bearing date May 10, 1893."

It says, "The adjustment of all other property matters." This is not a *property matter;* it does not relate to the properties of the companies, and so it does not fall within those terms. And it is not a matter that was *remaining.* It says: "The adjustment of all other property matters remaining, etc." This matter of the distribution of the stock was not remaining unprovided for. It was expressly provided for in this agreement of consolidation. Whatever the effect of this may be it was fully provided for there; so that it could not have been within the contemplation of the parties in writing this reference to the preliminary agreement. And it was not "between the two constituent companies and the consolidated company." It was not a matter between those companies: It was a matter between the new company and the stockholders of the old companies; so that phraseology would not embrace it. Then again, the provision of the preliminary agreement of May 10th was limited to an exchange of old stock for new. There was no power conferred or contemplated therein to sell any of the stock and pay any of the debts out of its proceeds.

So I think that the agreement of consolidation does not adopt and embrace, as a part of it, any of the terms of the preliminary agreement with reference to the distribution of the new stock. It was clearly not within the contemplation of the parties when this language was inserted in it.

Again, the preliminary agreement, so far as it authorized delivery of new stock to Robison and Shipherd, was an *individual* agreement that each shareholder's individual portion of the new stock be delivered to Robinson and Shipherd, *in exchange for the old stock.* No other trust was contemplated. It says, "And each of the undersigned stockholders in said company hereby agrees to deliver to said two persons, or their chairman, at such time as they may designate, all of the stock held by *him,* to be exchanged for stock of the consolidated company in proportion to the respective holdings of *each,* as each shall be entitled to receive the same." I conclude, therefore, (1) that the said provision of the agreement of consolidation was not valid; but if valid, it was departed from, it was not pursued; and (2) that the said provision of the preliminary agreement was not carried into the agreement of consolidation, but was superseded by it. But if it was adopted, it was departed from, by adding a power in Robison and Shipherd, and creating a trust in them in respect of the new stock that was not at all contemplated by the parties to the preliminary agreement.

And this power given to Robison and Shipherd to go into the market and sell stock, in an undetermined quantity, sufficient to liquidate the floating indebtedness of the cable company, was a dangerous power, and one easily abused,

and the abuse of it hard to discover. So that, whichever view of the matter may be taken, whether the provision of the agreement of consolidation be held to be valid, or whether it be invalid because it could not be carried out, and whether the provisions of the preliminary agreement were carried into the new agreement or not, when the new company came to distribute the new stock to those entitled to it, they put into the hands of Robison and Shipherd, as trustees (they are so designated in the certificate), they put it all in one certificate, payable to them *as trustees,* so that they had control of all of it; and they invested them with the power of going into the market and disposing of an undetermined portion of that stock, for the purpose of paying the floating indebtedness of the cable company. And it was in the exercise of that power, in the fraudulent exercise of it, that this trouble was brought about. If the new company had in some other way provided for the payment of that floating indebtedness, and had ascertained the net proportion of the 18,250 shares that should go to Robison and Shipherd, even if they had made the certificate in the name of Robison and Shipherd as trustees, it is possible, and yet I doubt it, that they would have been within the provisions of the preliminary agreement of May 10.

I am rather inclined to hold, that the provisions of that agreement would require them to issue the certificates directly to the individuals entitled to them, and then to authorize their delivery to the individuals so exchanging, only upon the surrender of the old certificates, so that they might be taken up and gotten out of the way. Then no chance for miscarriage, or fraud upon the old stockholders, would have been created by the unauthorized conduct of the new company. There would be no chance for it. But the consolidated company created a trust not authorized by the preliminary agreement, and not warranted by the agreement of consolidation; and it was therefore bound to see that transfers by the trustee were authorized, and that they were not made in violation of the trust, or to the detriment of the *cestui que trust.*

It is a settled doctrine of the law, that corporations, having in their keeping the primary evidence of the title to their stock, and having charge of the transfer thereof, are held to the exercise of diligence in its preservation for those who own it; and where stock stands in the name of a trustee, the corporation, knowing this, is bound to inquire as to the authority of the trustee to make transfer of the stock, before it permits such transfer to be made upon its books.

Now, as to this doctrine and its application to this case: I have examined a great number of authorities, and I find what I think is a fair statement of this doctrine and its application to this case in the second volume of *Thompson on Corporations,* in sec. 2528: "Elsewhere it is shown that a corporation is a trustee for each of its shareholders in the sense that if it permits his shares to be transferred on its books in fraud of his rights, it is liable to him in damages for the conversion. On principle the corporation is equally bound to protect the rights of the beneficial owner of shares which stand on its books in the name of a trustee who holds them in trust for another."

"The beneficiary is the real owner, and his trustee is but the repository of his legal title. Although there has been some waivering of judicial opinion on this question, yet most of the cases unite in holding that where the shares are so registered on the books of the company as to convey to the officers of the company notice that they are held in trust for a third person, the corporation is bound to see, before it permits a conveyance on its books by the trustee, that he has the consent of the *cestui que trust,* where that is necessary, or that he is otherwise acting within the authority conferred upon him by the instrument creating the trust, or by the decree of a court of competent jurisdiction; otherwise the corporation will be obliged to make good any loss accruing to the trust estate from the unauthorized transfer. In short, if the corporation having notice of the trust, permits the trustee to transfer without authority, it is liable if he misappropriates the fund."

Then in sec. 2541: "A corporation which has issued a certificate of stock to a person as trustee and has notice of the name of the *cestui que trust,* but on the trustee's wrongful transfer of the certificate issues a new one without making inquiry, is liable to the rightful owner thereby injured, *without proof of collusion* between the trustee and itself."

About as good a statement of the reason of this rule as I have found is in *Maygood* v. *Railroad Bank,* 5 Rich. (S. C.), on pages 390-1: "In equity the corporation is bound to protect the title of the *cestui que trust* under a trust of its stock declared upon its books against the exercise of powers forbidden by or inconsistent with the nature and terms of such trust.

"It is not necessary here to affirm as a general proposition that from the nature of the legal relation subsisting between a corporation and its stockholder, a trust arises charging a corporation with responsibilities of a trustee toward the stockholder.

"A more limited view of the equities springing from the relations of the parties will be sufficient for the purpose of the present case. The validity of a trust of corporate stock is not and cannot be questioned. To such a trust, when declared on the books of the corporation, such a corporation cannot be a stranger, from the nature of the trust itself. The declaration upon its books carries at the same time the force of notice of the trust and of an acceptance of a certain undivided responsibility connected with it.

"To define that responsibility recourse must be had to the nature of the legal duties incident to its relation to its stockholders. The legal duty of the corporation to assure the title of its stockholders is molded to conform to the state of relations between the trustee of stock and the *cestui que trust*. The corporation is not simply the custodian of the technical title of the stockholder, but of the subsistence of what the stock represents for the purpose of beneficial enjoyment by the stockholders. As the duty of the corporation is commensurate with the rights of the stockholder to the full beneficial enjoyment of that which is represented by the stock, it would follow that where the legal title and the beneficial right to the stock are in different persons, the duty of the corporation would extend to the protection of both. The legal title of the corporation having thus become molded to conform to the state of relations between the parties to a trust of stock, it is manifest that the corporation is to be regarded as so far a privy to the trust that any act on its part, tending to defeat the object of a trust will subject it to proceedings undertaken for the administration of the trust.

"The line of reasoning adopted in *Bayard* v. *Bank*, (52 Penn., 232), goes beyond that already presented, developing the characteristics of a trust in the general relation of the corporation to its stockholder. If the reasoning in that case is fully supported, it would necessarily substantiate the view already presented, and on the other hand, if the discussion in that case should be regarded as taking a range wider than that essential to the decision of the case, the conclusion of the court would still give authoritative support to the view here advanced.

"It is not essential to the view so presented to consider the liabilities of the corporations as of the same nature and extent as those of the trustee. While the trustee is bound to activity in enforcing the powers lodged in him for attaining the object of the trust, the duty of the corporation must be regarded as circumscribed by the nature of its general legal duties springing from its relation to its stockholders. Thus limited, the evil of exacting from the corporation an undue attention to the particulars of the administration of the trust, as commented upon in *Hortgo* v. *Bank*, (3 Ves., 55), could not arise. Inasmuch as the trust in the present case was declared in the books and face of the script to be the extent of naming the *cestui que trust*, it follows that if the action of the trustee in disposing of the stock was without authority, and tended to defeat the object of the trust, the corporation is liable in equity to the extent of any damage sustained by reason of its co-operation with the trustee to that end."

This doctrine is recognized by our supreme court, in *Cleveland & M. Rd.* v. *Robbins*, 35 Ohio St., 483, 500. In this case stock had been issued to A, and a few days after it was issued, A transferred it to B, and B mislaid the certificate, and it was not found for many years afterward. A number of years after that transaction, A again sold the stock to C; whether in fraud of B, or whether he had forgotten he had sold it once to B, does not appear. But he sold the stock to C, and thereupon C went to the corporation and made proof to the corporation, pursuant to one of the provisions of its by-laws, that the stock was lost and could not be produced, and thereupon the corporation issued to C a new certificate. Thereafter, B having died, his administrator discovered the certificate of stock among his papers, and presented it and demanded that it be transferred to the estate. There was a refusal, and this action resulted, and the supreme court held (and this is one of the strict holdings in this matter), the supreme court held that notwithstanding the corporation had acted pursuant to the provisions of its by-laws, the provision that provided and required full proof of the loss of the certificate before it issued a new one to C, yet that was a matter that was between the corporation and C, an that it could not affect the rights of B, or his administrator. That B was the only owner of the certificate, and that his rights were not affected by what had intervened with reference to C. The court in its opinion says:

"The duty of a corporation toward those interested in the transfer of its shares of stock has been thus stated: 'It is made the custodian of the shares, and is clothed with power to protect the rights of every one from unauthorized transfers. The power thus vested in the corporation is a trust placed in its hands for the protection of individual interests, and, like every trustee, it is bound to execute the trust with proper diligence and care, and is responsible for any injury sustained by its negligence or misconduct.' "

Of course that relates to the relation between the company and its stockholders generally. Then the court further says:

"In all such cases there may be no actual fault, on the part of the corporation, yet the principle results from justice and expediency, in such transactions, of casting the loss on those who can best provide against it."

If I have rightly considered this matter, I can see no escape from the conclusion that the loss to this plaintiff resulted from a breach of duty on the part of the consolidated company—a duty that it owed to the plaintiff, and that there is a resulting obligation on the part of the company to replace his stock, or to account for its value.

The issuing of the certificate for 18,250 shares to Robison and Shipherd was not issuing it to the cable company, for it was not issued to them as officers of the company, nor in virtue of their official relation to that company. It was issued to them *as trustees.* They were not trustees of that company, but of the new company.

This was not the act of the directors of the constituent companies by whose agreement the consolidation was made, but the act of the new company. The certificate was issued by the new company, and after it had been fully created and organized. It could not have been issued before.

When the new company issued this certificate, it sustained a trust relation to the old stockholders, with reference to this stock; and in issuing all this stock to Robison and Shipherd, they incumbered it with a new trust, never contemplated by this plaintiff and his associate stockholders. The doing of this bound the company to see to the faithful execution of the trust it had created.

The new company made Robison and Shipherd its transfer agents, clothed them with power to apply part of this stock to the payment of the floating indebtedness of the cable company, and to distribute the residue to those entitled to it, and it issued the stock to them as trustees. Every time they presented a certificate so issued to them, and obtained other certificates in its place, the company was bound to see that the certificates so obtained were issued and applied in a faithful discharge of the trust, and not in fraud of the beneficiaries under that trust.

I have been impressed with the fact that any solution of this case must work a great hardship somewhere. But, in the language of our supreme court heretofore read, "In all such cases, there may be no actual fault on the part of the corporation; yet the principle results from the justice and expediency in such transactions, of casting the loss on those who could best provide against it."

The defendant pleads both the four years and the six years statute of limitations. Some seven years after the consolidation, the plaintiff made demand for his stock, and upon the refusal of the company to deliver him any stock, he commenced this action. If the fiduciary relation of the new company to the stockholders in the constituent companies, with relation to the exchange of stock, is a trust cognizable exclusively in equity, it is a subsisting and continuing trust, within the meaning of sec. 4974. Rev. Stat., and the statute would not run against the action. If it falls within that class of trusts, then it is excepted from the operation of the statute; but if that is not so, I think this plea of the statute is disposed of against the company, by the case from which I have read, in *Cleveland & M. Rd. v. Robbins, supra.* The statute was pleaded in that case, and the court said:

"The answer sets up that the cause of action did not accrue within four years from the commencement of the action. The claim made in support of the plea is that the cause of action accrued at the time of the transfer of the stock to Burke and Perkins, on the 8th day of May, 1863.

"We cannot assent to this view. The certificates stated, in effect, that the stock would be transferred on the books of the company, upon the surrender of the certificates. Upon this statement of the company the holder of the certificates had a right to rely, until the transfer was refused, or he had notice that the stock had been transferred to other parties."

I am not able at this moment to determine in figures what the decree will be. It will require a calculation, and some data that I have not put upon my memorandum; they rest only in my recollection, and I am not clear about it. I think there will be no trouble in counsel agreeing, or the court ascertaining the requisite data with exactness. But this will be the character of the finding and decree: The new stock had a value in 1893, when it should have been delivered, turned over to this plaintiff. Just what that was, I am a little in doubt. It was worth somewhere near 50 per cent. of its par value, more or less. To pay the floating indebtedness of the cable company, of $421,621, out of this stock at that price, whatever that value may be found to be, would take so many shares of the 18,250 shares. That would leave so many shares of it, which shares remaining, if the distribution had been faithfully made by Shipherd, would have gone to all the stockholders of the cable company. Of the shares that would have gone to the share-

holders of the cable company, plaintiff would be entitled to his proportion, which would be 1-160. The capital stock of the cable company was four million dollars, one million dollars of preferred stock, and three million dollars of common stock, and it took five shares of the common stock to equal one of the preferred stock. That would make $1,6000,000. Now, the plaintiff had one hundred shares of the preferred stock worth $10,000, par, and $10,000 would be 1-160 of $1,600,000.

The decree will be that the consolidated company deliver to him that number of shares, whatever it may be found to be, and pay him the twenty per cent. of dividends; or it shall pay him the par value of the stock, plus the dividends. It appears in the evidence that since the consolidation, dividends have been paid upon the new stock aggregating twenty per cent.and that when this action was brought it was worth about par.

This subjects the plaintiff's stock to the payment of his proportion of the floating indebtedness of the cable company, and it carries out that provision of the agreement of consolidation. Since that provision was put into the agreement of consolidation, and the new stock allotted accordingly, it is fair to this plaintiff, and nothing else is fair to the new company, to carry out that provision. The interest of the plaintiff in the new company, that would be the equivalent of his interest in the old company, all that is equitably left to him, is his share of the residue after paying that indebtedness. The result is the same as if the cable company had paid its own indebtedness, or as though the new company had assumed it, as under the statute it should have done.

*Arnold Green,* for Plaintiff.
*Squire, Sanders & Dempsey,* for Defendants.

NOTE. *Arnold Green,* for Plaintiff:
Sec. 3181, R. S., is in no sense directory and a compliance with its provisions in every respect is required to effect a consolidation. *State* v. *Vanderbilt,* 37 Ohio St., 590-645, page 645, citing *Atlantic & Ohio Ry.* v. *Sullivan,* 5 Ohio St., 276; *State* v. *Lee* 21 Ohio St., 662; *State* v. *Life Assn.,* 29 Ohio St., 399; *People* v. *Chambers,* 42 Cal., 201.
The effect of the consolidation is to form a new company by the extinguishment of the old ones; *Ashley* v. *Ryan,* 49 Ohio St., 504-529, affirmed 153 U. S., 436; see opinion, pages 528, 529 and 530; *Pittsburg, C. & St. L. R. R. Co.* v. *Garrett,* 50 Ohio St., 405-417; *Railway Co.* v.*Jewett,* 37 Ohio St., 649; *Wabash, St. L. & P. R. R. Co.* v. *Ham,* 114 U. S. Sup. Ct., 595.
As to consolidation see also *Cook on Stockholders,* Secs. 667 *et seq.;* definition of certificates of stock, see *Cook on Stockholders;* Sec. 10; definition of capital stock, *Ib.,* Sec. 3; definition of stockholder, *Ib.,* Sec. 27; *Ib.,* Sec., 309.

Where an authority is given by the acts of the principal to two or more persons to do an act, the act is valid to bind the principal only when all of them concur in doing it fo the authority is construed strictly and the power is understood to be joint and not several: *Story on Agency* (7 ed.), Sec., 42; *Jewett* v. *Allein,* 7 N. H., 253; *Scott* v. *Detroit Society,* 1 Doug., (Mich.), 119; *Coldwell* v. *Harrison,* 11 Ala., 755; *Soens* v. *Racine,* 10 Wis., 271; *Inhab. of Parish in Sutton* v. *Cole* 3 Pick., 232; *Damon* v. *Inhab. of Granby,* 2 Pick., 345; *Cupper* v. *Inhab. of South Parish in Augusta,* 13 Mass., 185; *Low* v. *Perkins,* 10 Vt., 532; *Despatch Line of Packets* v. *Bellamy Mfg. Co.,* 12 N. H., 205, 226; *Woolsey* v. *Tompkins,* 23 Wendell 324; *Johnson* v. *Bingham,* 9 Watts & Serg., 56; *Heard* v. *March,* 12 Cush., 580.
Notice of facts to an agent is notice to the principal: *Story on Agency* (7 ed.). Sec. 140; *Porter* v. *Bank of Rutland,* 19 Vt., 410.
This agency was terminated by law on the consolidation taking effect: *Story on Agency* Sec., 462.
Limitations: *Cleveland and Mahoning R. R. Co.* v. *Robbins,* 35 Ohio St., 483; *Iron R. R. Co.* v. *Fink,* 41 Ohio St., 321.